UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                                   CASE NO.: 2:22-cr-23-SPC-NPM

KARL PATRICK KLUGE
_____

## OPINION AND ORDER[1]

Before the Court is Defendant Karl Patrick Kluge's Motion for Pre-Trial Suppression Hearing (Doc. 25), along with the Government's opposition (Doc. 28). The Court heard oral argument on the Motion, at which time Defendant was present and represented by counsel.[2] (Doc. 37). The Court reserved ruling after the hearing but now denies Defendant's Motion.

## BACKGROUND

Based on the record, the parties' papers, and one exhibit admitted at the hearing (Gov. Ex. 1A-1B), the Court makes these findings of fact material to the Motion.

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

[2] Because of the sole issue raised in the Motion, Defendant and the Government agreed that the Court needed no live testimony.

In mid-May 2021,[3] FBI Task Force Agent Donald Woelke was investigating child pornography available on public peer-to-peer file sharing programs ("P2P"). On May 16, he downloaded fourteen files from one internet protocol ("IP") address—*i.e.*, 73.107.141.236. (Gov. Ex. 1A at 13).[4] After determining that most files depicted child pornography, Agent Woelke investigated the IP address. That lead him to Comcast, who reported the IP subscriber to be "William Kluge III" of 3137 SE 22nd Avenue, Cape Coral, Florida 33904, a residential home ("Residence"). (*Id.* at 15). Agent Woelke then watched the Residence on June 21 and July 16.

On July 23, Agent Woelke applied for a federal search warrant. (Gov. Ex. 1A). Based on his investigation and years of training and experience with child pornography offenses, Agent Woelke believed evidence of child pornography would be at the Residence. The warrant sought, among other things, "All visual depictions, including still images and videos of child pornography stored on computers and storage media used as a means to commit violations of Title 18, United States Code, Sections 2252 and 2252A." (*Id.* at 1). A United States magistrate judge signed the warrant the same day. (Gov. Ex. 1B).

---

[3] Unless noted otherwise, all dates in this Opinion and Order took place during 2021.

[4] All pinpoint citations to the Government's Exhibit 1A are based on the number system identified at the bottom right of each page (*e.g.*, "GOV-00001").

On August 4, agents executed the warrant at the Residence and seized alleged child pornography images and videos on several devices found inside the home. Defendant, who lived at the Residence with his parents, was present when the warrant was executed. He was questioned on the scene and made inculpatory statements.

A federal grand jury then indicted Defendant for possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (Doc. 1). Defendant now moves to suppress all evidence from the August 4 search, including his inculpatory statements, under the Fourth Amendment. (Doc. 25). Because Defendant argues that Agent Woelke's affidavit supporting his application for the warrant ("Affidavit") lacked probable cause, the Court will detail its contents.

According to the Affidavit, probable cause existed to believe someone at the Residence was "involved in receiving, possessing, transporting, and distributing sexually explicit images of minors, in violation of 18 U.S.C. §§ 2252 and 2252A." (Gov. Ex. 1A at 3). To support the probable cause, the Affidavit offered background information on three topics pertinent to the Motion: child pornography in a digital world, collectors of child pornography, and P2P programs. (*Id.* at 8-12, 14-17).

The Affidavit starts by describing how computers, the internet, and digital cameras have eased the burden of and increased anonymity for sharing,

trading, transferring, viewing, obtaining, and storing child pornography. It also explains how "a computer user's Internet activities generally leave traces or 'footprints' and history [of] files of the browsers used," and that information on such files are "maintained indefinitely until overwritten by other data." (*Id.* at 10, 18).

> For collectors, the Affidavit says that
>
>> Individuals who collect Child Pornography generally do not dispose of their sexually explicit materials, and may go to great lengths to conceal and protect their collections of these materials from discovery, theft, and damage. The known desire of such individuals to retain child pornography, together with the sense of security afforded by using computers, provides probable cause to believe that computer images, especially child pornography and erotic nudity involving minors, will be retained by the collector indefinitely.

(*Id.* at 17-18).

The Affidavit also explains how P2P programs generally operate. (Gov. Ex. 1A at 11-12). Users download the program and share certain folders so others on the network can search for and download available files. (*Id.*). Because a P2P file transfer uses an IP address, the Affidavit explains how "[a] forensic examiner can often recover evidence that shows a computer contains P2P software, when the computer was sharing files and even some of the files which were uploaded or downloaded. Such information may be maintained indefinitely until overwritten by other data." (*Id.* at 12). A forensic examiner

also can determine the IP address from which a particular file was obtained. (*Id.* at 12-13).

Against this backdrop, the Court turns to Defendant's probable cause challenge to the Affidavit.

## DISCUSSION

Defendant argues the Court should exclude all evidence against him because the Affidavit was based on stale information that could not establish probable cause. In opposition, the Government claims the Affidavit established a substantial basis for the Magistrate Judge to find probable cause to issue the warrant. (Doc. 28 at 5-8). And even if the search warrant lacked probable cause, the Government argues that law enforcement relied on the warrant in good faith. (*Id.* at 8-11). The Court agrees with the Government on both arguments.

The Fourth Amendment protects individuals against the government performing unreasonable searches and seizures. U.S. Const. amend. IV. Search warrants offer that protection but only when issued on a finding of probable cause.

"Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Kapordelis*, 569 F.3d 1291, 1308-09 (11th Cir. 2009) (quoting *Illinois*

5

*v. Gates*, 462 U.S. 213 (1983)).  "For probable cause to exist, however, the information supporting the government's application for a search warrant must be timely."  *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). This is because "probable cause must exist when the magistrate judge *issues* the search warrant." *Id.* (emphasis added).

When reviewing staleness challenges to a search warrant, courts "do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, [courts] review each [warrant] based on the unique facts presented." *Id.* "In this case-by-case determination, [courts] may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.*

Here, the Affidavit presented ripe information for the Magistrate Judge to find probable cause that evidence of receiving or possessing child pornography would be at the Residence.  The Affidavit stated that someone using the IP address associated with the Residence installed P2P software, downloaded child pornography, and stored the files in a shared folder for others to download.  And that's precisely how Agent Woelke found the child pornography files, some of which he detailed in the Affidavit.

What's more, the character of child pornography contraband makes the two-month window between Agent Woelke downloading the files and applying for the Warrant reasonable. This is not a case about evidence of drugs and guns, where a two-month window could be too long. Instead, Agent Woelke sought child pornography saved on computers and other storage media. And such files are "less likely than other types of contraband to disappear over time" and are often recoverable even if deleted. *United States v. Lovvorn*, 524 F. App'x 485, 487 (11th Cir. 2013). Given these facts, the Affidavit did not present information so mature that other evidence was needed to show the ongoing nature of child pornography activity at the Residence.

In short, the Affidavit contained enough information for probable cause to defeat Defendant's staleness challenge. *See United States v. Thomas*, 2:20-cr-122-TPB-NPM, 2022 WL 613813, at *1 (M.D. Fla. Mar. 2, 2022) (finding "the information contained in the affidavit was not stale where the affidavit provided that the affiant had downloaded child pornography files in November 2018, and the search was being sought in January 2019"); *see also Gates*, 462 U.S. 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts" and a reviewing court should not invalidate a

search warrant by interpreting affidavits "in a hypertechnical, rather than a commonsense, manner" (internal quotations omitted)).[5]

Defendant also makes much about the Affidavit describing child pornography collectors as individuals who rarely delete their contraband because Agent Woelke provided no information to suggest Defendant fit that bill. Two flaws undermine this argument. First, although Defendant has no history of known sex offender status or child abuse (as in some other cases cited), the Affidavit described someone at the Residence who more than innocently stumbled upon child pornography while surfing the internet. It told the Magistrate Judge that someone using a specific IP address had downloaded P2P software, searched for child pornography from other users, downloaded desired images and videos, and allowed other users to access the files. This description of actively searching for and sharing child pornography, coupled with the nature of the digital information sought, provided a sufficient basis for the Magistrate Judge to find a fair probability the items sought in the search warrant would be at the Residence when he signed the Warrant.

Second, Agent Woelke applied for a warrant that targeted the Residence—not Defendant. The Affidavit made this point clear: "Because this

---

[5] *See also United States v. Touset*, 890 F.3d 1227, 1237 (11th Cir. 2018) (finding child pornography information that was a year and a half old not to be stale); *Lovvorn*, 524 F. App'x at 487 (finding child pornography information that was nine to twelve months old not to be stale); *United States v. Schwinn*, 376 F. App'x 974, 979 (11th Cir. 2010) (finding child pornography information that was ten months old not to be stale).

affidavit is being submitted for the limited purpose of seeking authorization to search the RESIDENCE, I have not set forth each and every fact learned during the course of this investigation." (Gov. Ex. 1A at 3). The Residence was Agent Woelke's focus because his investigation until then had only led him to information about the Residence, and not a specific resident.

In conclusion, there was sufficient probable cause to support the Magistrate Judge issuing the warrant where Agent Woelke downloaded child pornography files in May 2021 and the search was being sought in July 2021. But even if the Affidavit lacked probable cause, the Court still denies the Motion under the good-faith exception.

Suppression is not "a necessary consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 141 (2009). A court cannot admit "evidence resulting from a Fourth Amendment violation, *unless* an exception applies." *United States v. Watkins*, 10 F.4th 1179, 1180 (11th Cir. 2021) (emphasis added). The good-faith exception to the exclusionary rule is one such carve-out.

The exclusionary rule's "sole purposes . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236-37 (2011). And the deterrent value of exclusion corresponds to "the culpability of the law enforcement conduct" in committing the violation. *Herring*, 555 U.S. at 143. "When the police exhibit deliberate, reckless, or grossly negligent disregard for

9

Fourth Amendment rights, the deterrent value of exclusion is strong" enough to warrant suppression. *Davis*, 564 U.S. at 238 (quotations omitted). But "[w]here the official action was pursued in complete good faith, . . . the deterrence rationale loses much of its force." *United States v. Leon*, 468 U.S. 897, 919 (1984) (citation omitted). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid to the justice system." *Herring*, 555 U.S. at 144. "Balancing the benefits of deterrence and the system cost of excluding otherwise credible evidence, the Supreme Court has held that merely negligent law enforcement conduct does not justify exclusion." *United States v. Nicholson*, 24 F.4th 1341, 1353 (11th Cir. 2022) (citation omitted).

Law enforcement did not deliberately violate Defendant's rights where they reasonably relied on the Magistrate Judge finding probable cause to search the Residence and signing the warrant. Agent Woelke's Affidavit on which the Warrant was issued was not barebones or facially deficient. This case simply does not represent the "type of deliberate, reckless, or grossly negligent" action to trigger the exclusionary rule. Any constitutional violation was caused by law enforcement's good faith mistake, "rather than systematic error or reckless disregard of constitutional requirements." *Herring*, 555 U.S. at 147. So the costs of suppressing the evidence outweighs the benefits.

10

Accordingly, it is now

**ORDERED:**

Defendant Karl Patrick Kluge's Motion for Pre-Trial Suppression Hearing (Doc. 25) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on August 24, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record